IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BRITTANY C. TAYLOR, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. CIV-23-132-D |
| THOMAS MATWETWE JUMA, ROADPACER TRANSPORT LIMITED CO., | ) ) ) ) |
| Defendant. | ) ) |

**ORDER**

Before the Court is Defendants' Motion for Partial Summary Judgment & Brief in Support [Doc. No. 25]. Plaintiff filed a Response [Doc. No. 51], and Defendants filed a Reply [Doc. No. 52]. The Motion is fully briefed and at issue.

**BACKGROUND**

This case stems from a car accident that occurred on October 5, 2020 on U.S. Highway 177 in Pottawatomie County, Oklahoma. At the time of the accident, Defendant Thomas Matwetwe Juma was driving a semitruck as part of his employment with Defendant Roadpacer Transport Limited Co. ("Roadpacer"). When a vehicle in front of Plaintiff's vehicle stopped to make a U-turn, traffic suddenly came to a stop. Mr. Juma—who was traveling behind Plaintiff—was unable to stop in time and collided with the rear of Plaintiff's vehicle.

On September 6, 2022, Plaintiff filed suit in the District Court for Pottawatomie County, Oklahoma. Plaintiff filed an amended petition (referred to herein as the "Complaint") on January 5, 2023, and Defendants timely removed the case to federal court

based on federal diversity jurisdiction. In her Complaint, Plaintiff asserts a negligence claim against Mr. Juma and alleges that Roadpacer has *respondeat superior* liability for Mr. Juma's conduct. Plaintiff separately asserts a negligent entrustment claim against Roadpacer and seeks punitive damages against both Defendants.

In the instant Motion, Defendants argue that, because Roadpacer stipulates that Mr. Juma was acting within the course and scope of his employment at the time of the accident, Plaintiff's direct claims against Roadpacer (other than negligent entrustment) fail as a matter of law. Next, Defendants argue that Plaintiff lacks facts and evidence to prove negligent entrustment. And last, Defendants argue that Plaintiff cannot recover lost wages or punitive damages.

## UNDISPUTED MATERIAL FACTS[1]

Roadpacer is a commercial trucking company that employs approximately six drivers and is owned by Franklin Nyaata. Roadpacer hired Mr. Juma as an interstate commercial semitruck driver on July 10, 2010.

---

[1] This statement includes material facts that are supported by the record and not opposed in the manner required by Fed. R. Civ. P. 56(c)(1) and LCvR56.1(d). All facts properly presented by a party and not specifically controverted by an opponent are deemed admitted, pursuant to Fed. R. Civ. P. 56(e)(2) and LCvR56.1(e).

Here, Defendants set forth nine undisputed material facts. *See* Defs.' Mot. Summ. J. at 3-4. Plaintiff admits eight of those facts, but fails to indicate whether she admits or denies the ninth. Therefore, the Court deems the ninth fact admitted for purposes of ruling on Defendants' Motion. *See* Pl.'s Resp. at 6; *see also* LCvR56.1(e) ("All material facts set forth in the statement of material facts of the movant may be deemed admitted for the purpose of summary judgment unless specifically controverted by the nonmovant using the procedures set forth in this rule.").

On October 5, 2020, Plaintiff was involved in a vehicular accident with Mr. Juma. At the time of the accident, Mr. Juma was operating his semitruck within the course and scope of his contractual relationship with Roadpacer. Mr. Juma was traveling northbound on U.S. 177, just behind Plaintiff's vehicle. A vehicle ahead of Plaintiff stopped to make an illegal U-turn at a designated emergency vehicle U-turn location, which caused traffic to stop suddenly. Mr. Juma attempted to stop his semitruck and avoid Plaintiff's vehicle by turning toward the outside lanes of the highway. However, Mr. Juma's semitruck collided with the right rear portion of Plaintiff's vehicle, which caused her vehicle to collide with the median barriers. Mr. Juma testified that, had he kept more distance between his semitruck and Plaintiff's vehicle, and generally stayed more alert, he could have avoided the accident.

When Roadpacer hires semitruck drivers, it does not test them to see what they believe to be the appropriate distance at which to follow vehicles driving in front of them. After his hiring, Roadpacer is unsure whether, prior to the October 5, 2020 accident, Mr. Juma received any training related to the distance at which he should follow vehicles driving in front of him. However, Mr. Juma testified that he believes that, when driving a semitruck, three vehicle lengths was a safe distance to maintain between his semitruck and the vehicle in front of him. Mr. Juma's belief is concerning to Roadpacer, which provided conflicting testimony regarding what it believes to be a safe following distance for its semitruck drivers.

At the time of the October 5, 2020 accident, Mr. Juma was subject to the Federal Motor Carrier Safety Act ("FMCSA"), which, among other things, prohibits a commercial

3

driver from driving a commercial vehicle more than eleven hours in a fourteen-hour period. However, federal regulations also allow a driver to operate a commercial vehicle for personal conveyance (*i.e.*, for personal use or reasons) as off-duty and not counting against the eleven-hour driving limit, but only when the driver is relieved from all responsibility for performing work by the motor carrier. A commercial driver may not designate as personal conveyance time spent driving a commercial vehicle to pick up a load.

Roadpacer's semitruck drivers were required to maintain driving logbooks, which detailed the driver's trips and hours spent on the road. Roadpacer monitored its drivers' logbooks on a daily basis to ensure that they were driving in compliance with the law, and it believes one should not be allowed to drive a semitruck if they had incorrectly designated on-duty driving time as personal conveyance in their logbook. Roadpacer also believes that five instances of a driver improperly designating on-duty driving time as personal conveyance over the course of their employment is "too much" and should result in the driver being suspended from driving. Mr. Juma had at least five instances of improperly filling out his logbook, including on October 5, 2020—the day of the accident with Plaintiff. Despite having reviewed Mr. Juma's logbook, Roadpacer never told him that he had improperly designated on-duty driving time as personal conveyance. Nor did Roadpacer take any disciplinary action against Mr. Juma.

## STANDARD OF DECISION

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the

governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if the facts and evidence are such that a reasonable jury could return a verdict for the non-moving party. *Id.* All facts and reasonable inferences must be viewed in the light most favorable to the non-movant. *Id.* at 255.

A movant bears the initial burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the movant carries this burden, the non-movant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998); *see also* Fed. R. Civ. P. 56(c)(1)(A). The inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

## DISCUSSION

I.  **Because Roadpacer stipulates that Mr. Juma was acting within the course and scope of his employment at the time of the accident, Roadpacer is entitled to summary judgment on Plaintiff's direct negligence claims (except for negligent entrustment).**

Roadpacer stipulates that, at the time of the accident, Mr. Juma was acting within the course and scope of his employment. Accordingly, Roadpacer contends that Plaintiff's direct negligence claims against it (other than negligent entrustment) fail as a matter of law

under the Oklahoma Supreme Court's decision in *Jordan v. Cates*, 935 P.2d 289 (Okla. 1997).

As held in *Jordan*, "[w]hen an employer stipulates that an employee is acting within the scope of employment at the time of an altercation and punitive damages are available against it under the theory of *respondeat superior*, an additional claim for negligent hiring exposes the employer to no additional liability." *Id.* at 294. Thus, if an employer stipulates that any liability "would be under the *respondeat superior* doctrine," imposing liability under any other theory is "unnecessary and superfluous." *Id.* at 293, 294.

Plaintiff maintains that Defendants' reliance on *Jordan* "is fundamentally flawed and should be rejected." Pl.'s Resp. at 14.[2] To support her position, Plaintiff relies primarily on *Fox v. Mize*, 428 P.3d 314 (Okla. 2018). Plaintiff argues that the "reasoning of *Fox* and numerous trial court rulings since then show[s] that, outside of the intentional tort context, an employer's stipulation to vicarious liability does not bar direct negligence claims." Pl.'s Resp. at 14.

In *Fox*, the Oklahoma Supreme Court recognized that "an employer's liability for negligently entrusting a vehicle to an unfit employee is a separate and distinct theory of liability from that of an employer's liability under the respondeat superior doctrine." 428 P.3d at 322. By its express language, *Fox*'s holding is limited to negligent entrustment claims. *See id.* ("[W]e need not determine whether a negligent hiring claim should be treated differently than a negligent entrustment claim.").

---

[2] All citations to the parties' filings reference the Court's CM/ECF pagination at the top of each page.

6

Although *Fox* limited *Jordan* to its facts, the Court is not persuaded by Plaintiff's argument that the holding in *Jordan* does not apply in this context; *Jordan* has not been overruled and remains good law. Accordingly, the Court must follow it.³ Roadpacer is, therefore, entitled to summary judgment on Plaintiff's direct negligence claims (except for negligent entrustment).

## II. Whether Roadpacer negligently entrusted Mr. Juma with its company semitruck is a question of fact for the jury.

Liability for negligent entrustment of a vehicle may be imposed only when the following elements are established: (1) a person who owns or has possession and control of an automobile allowed another driver to operate the automobile; (2) the person knew or reasonably should have known that the other driver was careless, reckless, and

---

³ In the wake of *Fox*, numerous judges in this district have arrived at the same conclusion. *See, e.g.*, *CTC, Inc. v. Schneider Nat'l Inc.*, No. CIV-20-1235-F, 2021 WL 2295512, at *2 (W.D. Okla. June 4, 2021) (finding that defendant's stipulation to *respondeat superior* liability for any proven negligence of its employee "renders the other theories of liability referred to in the complaint— negligent training, retention and supervision—unnecessary"); *Estate of Ratley by and through Ratley v. Awad*, No. CIV-19-265-PRW, 2021 WL 1845497, at *4-5 (W.D. Okla. May 7, 2021) (finding that, because the defendant-employee "was acting within the scope of his employment immediately before and during the accident . . . [p]laintiffs' claims for direct liability against [defendant-employer] (except for negligent entrustment) should be dismissed"); *Gregory v. Lindamood Heavy Hauling, Inc.*, No. CIV-22-327-R, 2022 WL 2792203, at *3 (W.D. Okla. July 15, 2022) ("There is no dispute that [defendant-employer] stipulated that [defendant-employee] was acting within the course and scope of his employment at the time of the accident. Therefore, applying *Jordan*, the [c]ourt [dismisses] [p]laintiff's claims for negligent hiring, training, supervision, retention, and monitoring."); *Sykes v. Bergerhouse*, No. CIV-20-333-G, 2021 WL 966036, at *3 (W.D. Okla. Mar. 15, 2021) ("*Jordan* remains viable. . . . Accordingly, in light of [defendant-employer's] stipulation as to the employment and agency of its driver, [p]laintiff's direct-negligence claims do not plausibly show an entitlement to relief against [defendant-employer] under Oklahoma law."); *Annesse v. U.S. Xpress, Inc.*, No. CIV-17-655-C, 2019 WL 1246207, at *3 (W.D. Okla. Mar. 18, 2019) ("*Jordan* has not been overruled. Thus, it still remains good law and, in applying Oklahoma law, this [c]ourt is bound to follow it."). This Court recently reached the same conclusion, too. *See Schriner v. Gerard*, No. CIV-23-206-D, 2023 WL 3138026, at *2 (W.D. Okla. Apr. 27, 2023) (dismissing direct negligent hiring, qualifying, training, supervision, and retention claims against defendant-employer as superfluous pursuant to *Jordan*).

incompetent; and (3) an injury was caused by the careless and reckless driving of the automobile. *Green v. Harris*, 70 P.3d 866, 871 (Okla. 2003); *see also Fox*, 428 P.3d at 320 ("Negligent entrustment requires proof that an individual supplies a chattel for the use of another whom the supplier knows or should know is likely to use the chattel in a way dangerous and likely to cause harm to others."). "The question of negligent entrustment is one of fact for the jury, and may be proven by circumstantial as well as positive or direct evidence." *Green*, 70 P.3d at 871.

Plaintiff advances two theories in support of her negligent entrustment claim. First, Plaintiff contends that Roadpacer "admits that [] any training informing [Mr.] Juma that he only needed to maintain a distance of three vehicle lengths with vehicles driving in front of him would be 'inadequate' and 'concerning.'" Pl.'s Resp. at 18. Second, Plaintiff contends that Mr. Juma "improperly logged driving time as personal conveyance on numerous occasions in violation of [FMCSA] rules prior to the subject collision and those violations, according to Roadpacer, are 'too much' and should have resulted in him being suspended from driving." *Id.*

Here, Plaintiff does not present evidence of Mr. Juma's propensity for reckless or careless driving in the past. Instead, Plaintiff focuses on Mr. Juma's incompetence due to his allegedly flawed understanding of how closely to follow vehicles driving in front of him, as well as his history of inaccurate or falsified logbook entries.[4] Specifically, Plaintiff

---

[4] Defendants note that Plaintiff does not rely on any expert testimony supporting her logbook-based theory. Assuming expert testimony is in fact required, Defendant's assertion no longer appears accurate. *See* 3/8/2024 Order [Doc. No. 50] (granting Plaintiff's Unopposed Motion for Leave to Designate Expert Witness Out of Time [Doc. No. 49]); *see also* Cole Report at 12 [Doc.

argues that Mr. Juma had "an unsafe understanding [of] how much distance to allow when driving behind another vehicle," and that unsafe understanding led to him following behind Plaintiff too closely on the day of the subject accident. Pl.'s Resp. at 19. Tying that unsafe understanding to Roadpacer, Plaintiff further argues that Roadpacer acknowledges Mr. Juma's unsafe understanding but failed to appropriately train Mr. Juma on the topic, or otherwise ensure Mr. Juma could be trusted to drive his semitruck behind vehicles at a safe distance. *Id.*

And as for her logbook-based theory, Plaintiff contends that Roadpacer "turned a blind eye to [Mr. Juma's] violations and allowed [him] to drive when its own standards held that he should have been suspended from driving." *Id.* at 21. Further, Plaintiff argues that Mr. Juma "violated the FMCSR personal conveyance rules on the day of the collision at issue, when he should not have been driving." *Id.* at 22.

Upon consideration of the summary-judgment record, viewed in the light most favorable to Plaintiff as the non-movant, the Court finds that Plaintiff has presented minimally sufficient facts from which reasonable jurors could find that Roadpacer did not "conduct a reasonable inquiry into [Mr. Juma's] qualifications and training, or otherwise take reasonable action to ensure that [Mr. Juma] was sufficiently qualified and trained, before assigning [Mr. Juma] to drive a heavily loaded semi-truck . . . ." *See Loyd v. Salazar*, No. CIV-17-977-D, 2020 WL 7220790, at *4 (W.D. Okla. Dec. 7, 2020). "The

---

No. 56-1] (opining that, among other things, Mr. Juma "lacked basic knowledge [regarding] how to properly complete his driver's logs" and "falsified his logs and violated the FMCSA regulations").

9

reasonableness of [Roadpacer's] conduct to determine that [Mr. Juma] was competent to perform the driving job is reasonably subject to different conclusions and must be resolved by a trier of fact." *Id.*; *see also Stanley v. Wifa*, No. CIV-22-159-F, 2023 WL 6380004, at *3 (W.D. Okla. Sept. 29, 2023) ("This record, assuredly, is not sufficient to subject Mr. Wifa or Halliburton to eternal damnation, but it is, in the court's view, sufficient to make the negligent entrustment claim submissible to the jury.").

### III. Defendants are entitled to summary judgment on Plaintiff's request for lost wages.

Defendants argue that Plaintiff cannot recover lost wages because there is no admissible evidence before the Court to support such an award. Defs.' Mot. Summ. J. at 9-10. It appears that Plaintiff has abandoned seeking lost wages, as there is no reference to lost wages in her initial disclosures [Doc. No. 25-5] or discovery responses [Doc. No. 25-6], and her retained expert, Mr. Lon Huff, does not address lost wages in his Rule 26 report [Doc. No. 14-2]. Additionally, Plaintiff fails to address the issue in her Response.

Therefore, because there is no admissible evidence before the Court to support such an award, and Plaintiff fails to address the issue in her Response, the Court finds that Defendants are entitled to summary judgment on Plaintiff's request for lost wages.

### IV. Plaintiff's request for punitive damages is an issue for trial.

Under Oklahoma law, punitive damages are a question for the jury and are only available in actions involving fraud, oppression, malice, or gross negligence. *Fuller v. Neundorf*, 278 P.2d 836, 839 (Okla. 1954); *see also Fox v. Okla. Mem'l Hosp.*, 774 P.2d 459, 462 (Okla. 1989) (concluding that issues of negligence and the degrees thereof are

questions for the trier of fact). The Oklahoma Supreme Court refers to gross negligence as a reckless disregard for the rights of others or the equivalent of evil intent. *White v. B.K. Trucking Co., Inc.*, 405 F. Supp. 1068, 1070 (W.D. Okla. 1975); *see also Fuller*, 278 P.2d at 839. "Punitive damages are allowable when there is evidence of reckless and wanton disregard of another's rights from which malice and evil intent may be inferred." *Graham v. Keuchel*, 847 P.2d 342, 363–64 (Okla. 1993) (indicating that evil intent may be inferred from a complete indifference to the consequences, reckless disregard of the safety of others, or gross negligence).

Upon consideration, the Court finds that a reasonable person could conclude from the evidence of record that Defendants were indifferent to the consequences of their actions or demonstrated reckless disregard of another's rights. Namely, there appears to be sufficient evidence to support a finding that Mr. Juma knew he was following Plaintiff's vehicle too closely and consciously chose to disregard that risk. The same is true regarding Roadpacer's concerns about Mr. Juma's understanding of how closely to follow vehicles in front of him. Further, there appears to be sufficient evidence to support a finding that Roadpacer's disregard for Mr. Juma's logbook violations constitutes a reckless disregard for those drivers Mr. Juma might encounter on the road.

To be sure, Plaintiff faces a high burden developing this evidence in a way that warrants submitting punitive damages to the jury. But at this juncture, and viewing the facts in the light most favorable to Plaintiff as the non-movant, the Court cannot definitively

11

conclude that Plaintiff would fail to carry that burden. Therefore, summary judgment on Plaintiff's request for punitive damages is unwarranted.[5]

## CONCLUSION

Based on the foregoing, the Court finds that genuine disputes of material fact preclude summary judgment on Plaintiff's negligent entrustment claim and request for punitive damages. However, Roadpacer is entitled to summary judgment on Plaintiff's other direct negligence claims, as well as her request for lost wages.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Partial Summary Judgment [Doc. No. 25] is **GRANTED IN PART** and **DENIED IN PART**, as fully set forth herein.

**IT IS SO ORDERED** this 21st day of February, 2025.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge

---

[5] Of course, Defendants may again argue against submission of punitive damages to the jury at the Rule 50 stage of trial.